IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION


GUY MICHAEL,

                    Plaintiff,                                        No. 2:11-cv-00713-SU

            v.                                          FINDINGS AND RECOMMENDATION

UNITED STATES OF AMERICA,

                    Defendant.
_____

SULLIVAN, Magistrate Judge:

*Findings and Recommendation*

        Guy Michael, appearing *pro se*,  filed a Complaint in the Circuit Court of the State of Oregon

for the County of Baker against three named defendants, all employees of the Bureau of Land

Management ("BLM"), arising from the seizure and removal of tools, equipment and structures from

a mining site previously occupied by Michael.  Michael's Complaint charges, among other things,

that agents of the BLM "unlawfully confiscated tangible property and caused an actual divestment

Page 1 - FINDINGS AND RECOMMENDATION

of real estate and continues to withhold the right of access and recovery of the valuable mineral deposit of Round Butte 2, causing the taking, as well, of Plaintiff's right to a livelihood from ownership of such tangible and real property under . . . the U.S. Constitution." (Compl. ¶ 2.) The United States certified that all three named defendants were acting within the course and scope of their employment during the relevant time period and, accordingly, removed the action to this court and substituted the United States as the party defendant. *See* 28 U.S.C. § 2679(d)(2).

Pending before the court are:

- Michael's Motion to Transfer, Opposition to Notice of Removal, and Opposition of Substitution of the U.S. as Defendant, asking the court "to transfer this case to the Court of Federal Claims to have it decide whether Defendants' were acting within the scope of their duties, or, to remand the case to the Oregon Circuit Court, County of Baker should it be determined that Defendants' did act outside the scope of their duty and thereby stepped outside immunity from state court proceedings" (Pl.'s Mot. Transfer at 10);

- Michael's Motion to Request Permission to Correct Plaintiff's Response to Defendant's Motion to Dismiss, and Gross Errors in Defendant's Reply to Response to Motion to Dismiss seeking permission to correct errors in his response to the Government's Motion to Dismiss and to challenge "Gross Errors in Defendant's Reply to Response to Motion to Dismiss" (Pl.'s Mot. Correct at 3-4);

- Government's Motion to Dismiss for lack of subject matter jurisdiction or, alternatively, for failure to state a claim.  (Def.'s Mem. Dismiss 1.)

For the reasons set forth below, Michael's Motion to Transfer should be granted, in part, and denied, in part.  Michael's federal takings claims should be transferred to the Court of Federal Claims and his state claims should be dismissed, without prejudice.  Accordingly, all remaining motions should be denied as moot.

Page 2 - FINDINGS AND RECOMMENDATION

*Factual Background*

The factual background is taken from Michael's Complaint and, at this stage, the court must assume Michael's facts are true.

In December 1991, Michael filed a notice with BLM for Round Butte placer mining claims on lands open to mineral entry under the Mining Law of 1872.  (Compl. ¶¶ 12, 14.)  In 1995, Michael sent notice to the BLM of a "change to the occupancy by placing a small building and developing the spring for domestic use," which was approved by the agency.  (Compl. ¶ 14.)

Subsequently, use and occupancy regulations for public land were promulgated under 43 C.F.R. Subpart 3715, effective August 15, 1996.  It appears that under those regulations, Michael's activities on the Round Butte claims did not comply with the requirements for occupancy set forth in § 3715, but he did qualify for a one-year grace period[1] under § 3715.4, because he was occupying public land prior to the effective date of the regulations.  *See* 43 C.F.R. § 3715; (Def.'s Mot. Dismiss Ex. 2 at 1-2.)

It appears from the Complaint the BLM determined Michael failed to meet the requirements for occupancy because on July 25, 2008, the BLM issued a written Decision titled "Occupancy Nonconcurrence and Immediate Cessation" ("July 2008 Decision").  *See* 43 C.F.R. § 3715.4-3; (Def.'s Mot. Dismiss Ex. 2 at 1-2; Compl. ¶ 15.)  The July 2008 Decision ordered Michael to cease all residential occupancies and, within 90 calendar days, remove all structures, material, parts, equipment, and other personal property from the site.  *See* 43 C.F.R. 3751.7-1; (Def.'s Mot. Dismiss Ex. 2 at 5; Compl. ¶ 15.)  Michael appealed the July 2008 Decision, and, on March 3, 2009, the

---

[1]The one year grace period was to provide Michael additional time to meet the requirements for occupancy under 43 C.F.R. § 3715.

Interior Board of Land Appeals ("IBLA") affirmed the order to cease occupancy.  (Def.'s Mot. Dismiss Ex. 3; Compl. ¶ 15.)  Shortly thereafter, Michael alleges he received another letter from the BLM field office in Baker City, Oregon informing him he could not reside on the property, "the 'Notice' had expired and [Michael] was to remove all equipment and residence and reclaim all disturbances." (Compl. ¶¶ 15, 16.)

Michael alleges he realized the BLM was "not willing to recognize his property rights granted under the General Mining Law of 1872 and[,] after receiving the two letters, [Michael] wrote a letter to the Baker Field Office of BLM, the Interior Board of Land Appeals administrator and the BLM Solicitor at the BLM State office in Portland to assert his rights." (Compl. ¶ 20 and Ex. 6.)  Michael alleges the letter, sent on April 30, 2009, asserted he "owned a 'vested locatable mining claim' under the 1866 and 1872 Mining Acts." (Compl. ¶ 20 and Ex. 6.)  Michael's April 2009 letter also stated that all reclamation not interfering with the locatable mineral rights was accomplished; and because this claim is valid by discovery of gold and silver, mining development was by "other authorization" of law and without BLM  management authority.  (Compl. ¶ 20 and Ex. 6.)  Michael also stated that

any interference by  BLM personnel affecting the granted mineral property would "result in full legal prosecution for trespass and unlawful harassment."  (Compl. ¶ 20 and Ex. 6.)

According to Michael's Complaint, he did not  receive a response to his April 2009 letter so he wrote another letter to Ted Davis, the acting field manager for the BLM's Baker Field Office. In that letter, Michael described any taking by  confiscation or theft of personal property, without a court order, as an unlawful "taking" of his livelihood.  (Compl. ¶ 22.)

Michael alleges on June 2, 2009, the individual defendants, acting as agents of the BLM,

"came to Plaintiffs property and cut the lock off his resident RV, placed Government signs on top of posted private property and on other equipment, rummaged through the shop trailer and took other handy items, such as a pressure washer and a chainsaw, moved [a] dump truck and loaded Plaintiff's backhoe on the trailer and towed the RV and hoe to the BLM yard in Baker City, approximately 45 miles from Plaintiff's property." (Compl. ¶ 24.) Michael additionally alleges the "equipment used in the development of the private property and minerals were either taken, or had signs on them stating 'Property of the United States.' " (Compl. ¶ 28.)

According to Michael's Complaint, the individual defendants named in this action either confiscated Michael's equipment and personal residence or supervised the taking and knew it was wrongful. (Compl. ¶ 27.) Further, the named defendants' actions caused intimidation and "prevented [Michael] from completing the required labor to preserve three of the mining claims." (Compl. ¶ 28.)

Michael represents he "complied with the requirements of ORS 517 in posting and maintaining [his] mining claims under Oregon law and annual working and developing his valuable mineral deposits on Round Butte 2, as well as locating other valuable deposits on the other mining claims at issue in this complaint and complied with all of the requirements as noted in 30 USC 21 through 54 on (Round Butte, Round Butte 2, (placer claims) and Burnt River Queen and Black Butte (lode claims))." (Compl. ¶ 32.)

As a result of defendants' actions, Michael charges he had no equipment available to complete the required work and preserve his claims so that three of the unpatented mining claims were subsequently lost. (Compl. ¶ 33.) Michael alleges he "filed the work that had been accomplished with Baker County Recorder and with the BLM State office." (Compl. ¶ 33.)

Plaintiff claims he received a letter from the state BLM office, dated February 8, 2010, informing him that because he failed to perform required assessment work, "the claims will be open to relocation by rival c1aimants that he is allowed within 30 days to inform which claim the labor that was accomplished should apply." (Compl. ¶ 33.) According to Michael he informed the state BLM office that the labor occurred on Round Butte 2.

In his Complaint, Michael alleges, among other things, that defendants caused "the taking . . . of Plaintiff's right to a livelihood from ownership of such tangible and real property under the . . . U.S. Constitution . . . . ". (Compl. ¶ 2.) Michael also charges defendants trespassed upon his real property and stole his mining equipment (First Claim), and confiscated his tangible property, in violation of due process, causing a loss to his mining claims and his right to earn a livelihood (Second Claim). Michael requests over one million dollars in damages as a result of the alleged wrongful conduct by the government.

## Discussion

As a threshold matter, Michael contends the Court of Federal Claims has exclusive jurisdiction over this action and, accordingly, he moves this court for an order transferring his Complaint to the Claims Court. (Pl.'s Mot. Transfer 1-2.) Specifically:

> This complaint is for damages that Defendants, whether as agents of BLM or not, unlawfully confiscated tangible property and caused an actual divestment of real estate and continues to withhold the right of access and recovery of the valuable mineral deposit of Round Butte 2, causing the taking, as well, [as] Plaintiff's right to a livelihood from ownership of such tangible and real property under the Oregon Constitution (2008), the U.S. Constitution and the Oregon Revised Statutes (ORS) of the State of Oregon and under the General Mining Law of 1872 as amended.

(Compl ¶ 2.)

Michael challenges this court's subject matter jurisdiction over his complaint. Subject matter

Page 6 - FINDINGS AND RECOMMENDATION

jurisdiction is a threshold issue that must be resolved at the earliest possible stage. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (quotations and citation omitted)). The court has no discretion to delay the determination of whether it possesses the authority to consider the claims in Michael's Complaint. "It is fundamental to our system of government that a court of the United States may not grant relief absent a constitutional or valid statutory grant of jurisdiction." *United States v. Bravo-Diaz*, 312 F.3d 995, 997 (9th Cir.2002). Thus, before ruling on any of the other pending motions filed in this case, the court must first determine whether exclusive jurisdiction for Michael's claims lie elsewhere. *See Ex parte McCardle*, 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."); *accord Steel Co.*, 523 U.S. at 94.

The Tucker Act confers jurisdiction on the Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Supreme Court has determined Congress intended the Court of Federal Claims to have "exclusive jurisdiction to render judgment upon any claim against the United States for money damages exceeding $10,000." *E. Enterprises v. Apfel*, 524 U.S. 498, 520 (1998) (*quoting* 28 U.S.C. § 1491(a)(1)).

Jurisdiction in the Court of Federal Claims is neither discretionary nor dependent upon a

Page 7 - FINDINGS AND RECOMMENDATION

showing of a nonfrivolous claim on the merits. *See Jan's Helicopter Service, Inc. v. Federal Aviation Administration*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) ("whether appellants' takings claims will be successful on their merits [ ] do[es] not affect the jurisdiction of the Court of Federal Claims to consider those claims"). The issue before the Federal Circuit[2] in *Jan's Helicopter*, was whether plaintiffs' claims fell within the terms of the Tucker Act's waiver of sovereign immunity, even if those claims were frivolous. 525 F.3d at 1304-05. The Federal Circuit answered that question in the affirmative and held the Court of Federal Claim's jurisdiction does not require a showing of nonfrivolous claims on the merits. *Id.* at 1305-09. Rather, the district court need only consider whether "plaintiff has made a nonfrivolous assertion that [he] is within the class of plaintiffs entitled to recover under the money-mandating source." *Id.* at 1307. *See also United States v. Mitchell*, 463 U.S. 206, 226 (1983) (Court of Federal Claims had jurisdiction because the statutes and regulations at issue "clearly established[ed] the fiduciary obligations of the Government in the management and operation of Indian lands and resources."); *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003) ("It is enough . . . that a statute creating a Tucker Act right be reasonably amendable to the reading that it mandates a right of recovery in damages.").

　　　Relevant to the court's inquiry here, the Federal Circuit expressly ruled that the merits of plaintiff's claims are not pertinent to the jurisdictional inquiry. *Jan's Helicopter*, 525 F.3d at 1307; *see also White Mountain*, 537 U.S. at 476 n.4. In fact, only after the initial inquiry, *i.e.*, has plaintiff alleged a violation of a statute or the Constitution such that if he were to prevail, he would be entitled to monetary relief, *and* the Court of Federal Claims takes jurisdiction over the case, are the

---

[2]The Federal Circuit reviews, among other things, decisions from the Court of Federal Claims.

merits of plaintiff's claim considered.  *Id*. at 1306-09.

> In determining whether the Court of Federal Claims has jurisdiction, all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source. There is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits. A contrary rule would seriously undermine Congress's decision to vest the Court of Federal Claims with exclusive jurisdiction over claims against the United States seeking money damages exceeding $10,000 and founded on the Constitution or a federal statute. *Claims erroneously filed in the district courts could only be transferred to the Court of Federal Claims once the district court had examined the merits to ascertain whether the claim was frivolous or substantial, a task which Congress entrusted exclusively (in the first instance) to a court specially created for that purpose.*

*Id.* at 1309 (emphasis added).

Michael's claim here "is about takings without compensation under the Oregon and U.S. Constitution."  (Pl.'s Reply 2; *see also* Compl. ¶ 2 (alleges confiscation of tangible property, divestment of real estate and "causing the taking . . . of Plaintiff's right to a livelihood from ownership . . . under the Oregon Constitution . . ., the U.S. Constitution . . . .").).  Thus, the Complaint invokes the Takings Clause of the Fifth Amendment.   It is undisputed the Takings Clause . . . is a money-mandating source for purposes of Tucker Act jurisdiction."   *See Jan Helicopters*, 525 F.3d at 1309; *see also E. Enterprises*, 524 U.S. at 520 ("[A] claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute.").

In addition, jurisdiction for Michael's takings claim grounded in the Mining Law of 1872 for recovery related to his unpatented mining claims properly lies in the Court of Federal Claims. *See, e.g., Cook v. U.S.*, 85 Fed. Cl. 820 (Fed. Cl. 2009) (Court of Claims has jurisdiction under the

Page 9 - FINDINGS AND RECOMMENDATION

Tucker Act for claims arising out of taking of unpatented mining claims); *Hall v. U.S.*, 84 Fed. Cl. 463 (Fed. Cl. 2008) (claimant to an unpatented mining claim possesses all of the incidents of real property, including a property interest for purposes of compensation under the Fifth Amendment); *Bush v. U.S.*, 58 Fed. Cl. 123, 125 (Fed. Cl. 2003) ("It is well settled that an unpatented mining claim may be a property interest subject to a Just Compensation Claim.").

Michael's Complaint contains nonfrivolous allegations such that he falls within a protected class under the Fifth Amendment. The law is clear that it is for the Court of Federal Claims, in the first instance, to address whether Michael has stated a takings claims upon which relief may be granted. The government's arguments regarding whether Michael possessed a legal interest in either the real or personal property at the time of seizure are relevant to whether Michael's takings claim will be successful on its merits, but do not affect the jurisdiction of the Court of Federal Claims to consider those claims. *See, e.g., Jan's Helicopter*, 525 F.3d at 1309 (whether plaintiff can establish he owns a valid property right goes to whether he can state a cause of action, not to subject matter jurisdiction); *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998) (analyzing arguments about the authorization of the government actions as an issue of whether plaintiff had stated a taking claim on which relief could be granted, not as an issue of subject matter jurisdiction). The Court of Federal Claims has exclusive jurisdiction to consider those claims under the Tucker Act, and this court lacks subject matter jurisdiction over the federal claims in Michael's Complaint.[3]

The final issue for the court is whether this action should be dismissed or transferred. If a

_____

[3]Michael insists there are no tort claims alleged in his Complaint. (Pl.'s Reply.)

Page 10 - FINDINGS AND RECOMMENDATION

court lacks jurisdiction over a federal civil action, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed."  28 U.S.C. § 1631; *see also Puri v. Gonzales*, 464 F.3d 1038, 1042 (9th Cir. 2006).  As explained above, because Michael is asserting claims against a government agency based upon a money-mandating provision of the Constitution and seeking money damages in excess of $10,000, the Court of Federal Claims has exclusive jurisdiction over those claims. Based upon controlling precedent from the Federal Circuit as set forth in *Jan's Helicopter*, this court concludes it would be in the interest of justice to transfer this action to the Court of Federal Claims, rather than dismissing it.  Therefore, this action should be transferred to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.

Lastly, with respect to the state law claims alleged in Michael's Complaint, where a district court dismisses "all claims over which it has original jurisdiction," it may, in its discretion, "decline to exercise supplemental jurisdiction" over any pendent state law claims.  28 U.S.C. § 1367(c)(3); *see also Lacey v. Maricopa Cnty.*, 649 F.3d 1118, 1137 (9th Cir. 2011).  In this instance, the court declines to exercise supplemental jurisdiction over Michael's remaining state law claims and those claims should be dismissed, without prejudice.

*Recommendation*

Based on the foregoing, the court recommends Michael's Motion to Transfer (doc. #7) be GRANTED, in part, and DENIED, in part.  Accordingly, Michael's Complaint (doc. #1) alleging federal takings claims should be TRANSFERRED to the Court of Federal Claims; and Michael's state law claims should be DISMISSED, without prejudice.  All remaining motions should be DENIED as moot.

Page 11 - FINDINGS AND RECOMMENDATION

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due **November 30, 2011**.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 15th day of November 2011


/s/ Patricia Sullivan
                Patricia Sullivan
        United States Magistrate Judge